**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Paul C. "Paulie" VILLANO,**
**Defendant-Appellant.**

**No. 85–2535.**

United States Court of Appeals,
Tenth Circuit.

April 21, 1987.

---

Arthur M. Schwartz (Michael W. Gross, with him on the briefs), Denver, Colo., for defendant-appellant.

Richard Marien, U.S. Dept. of Justice, Kansas City, Kan. (Robert N. Miller, U.S. Atty., Denver, Colo., and A. Mary Sterling, U.S. Dept. of Justice, Kansas City, Kan., on the briefs) for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, BARRETT, McKAY, LOGAN, SEYMOUR, ANDERSON, TACHA and BALDOCK, Circuit Judges.

## ON REHEARING EN BANC

BALDOCK, Circuit Judge.

Defendant, Paul C. Villano, filed a motion in federal district court to correct a clerical mistake in the order of judgment and commitment. He asserts that the sen-

tence spoken by the trial judge is different from what appears on the judgment and commitment order, and because the two conflict, the oral sentence should control. The district court denied his motion, and a divided panel of this court affirmed that denial. The panel's decision was vacated when the majority of the active judges of the circuit voted to have the appeal determined by an en banc panel. We granted rehearing en banc to consider the propriety of changing the established rule that an unambiguous oral pronouncement of sentence controls when there is a conflict between it and a written order of commitment. We decline to change the rule and therefore reverse the district court's decision not to correct the judgment and commitment order.

## I.

Defendant and two codefendants were sentenced on December 6, 1982, by the same federal district judge. The defendant and codefendants pleaded guilty to three counts: (I) conspiracy to make extortionate extensions of credit, (II) receipt of a firearm by a felon, and (III) false declaration on an income tax return. The two codefendants were sentenced to a five year prison term and a $10,000 fine on Count I, a three year prison term and a $5,000 fine on Count II, and a two year prison term and a $5,000 fine on Count III, each prison term to be served consecutively. Thus, the total prison sentence for each codefendant was ten years.

The sentence defendant received, as spoken by the judge, was different from what the codefendants received. Defendant's sentence was identical to the sentences received by the codefendants except that Count III would run consecutively with Count I. Thus, defendant's total prison sentence was eight years. The judgment and commitment order, signed the same day as the sentencing proceeding, was different from the oral pronouncement of sentence. The judgment and commitment or-

der reflected a prison sentence of "five years as to Ct. I, three years as to Ct. II, and two years as to Ct. III, to run consecutively." Record vol. I at 19. The prison sentence contained in the written order amounts to ten years. This longer sentence also appears in the "final judgment" and the district court's docket sheet. Record vol. I at 18 and document 14 at 3.

Defendant's March 1983 motion to reduce his sentence pursuant to Fed.R. Crim.P. 35 was denied. His petition to set aside the sentence pursuant to 28 U.S.C. § 2255 also was denied. That denial was affirmed on appeal. In September 1985, almost three years after he was sentenced, defendant moved to correct a clerical mistake in the judgment and commitment order pursuant to Fed.R.Crim.P. 36. The same district judge who imposed the sentence also denied this motion, stating in his order:

> The written judgment and sentence is the only order of commitment. It is executed by the court and it controls. Moreover, it was the court's intent that defendant Villano receive the same sentence as his codefendants and that all three receive an effective term of ten years. The statement of the court appearing in the transcript must be either an error by the reporter or the court mispoke [sic] itself.

Record vol. I, document 9 at 1. The defendant and the codefendants' attorneys recall the sentencing judge stating that Count III would run consecutively with Count I. That shorter sentence is reflected in the transcript of the sentencing proceeding and a taped recording of it.

## II.

▪▪▪ It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict. This rule is recognized in virtually every circuit[1] and has

---

**1.** For example, *see United States v. Lewis*, 626 F.2d 940, 953 (D.C.Cir.1980); *United States v. Pagan*, 785 F.2d 378, 380 (2d Cir.1986); *United States v. Morse*, 344 F.2d 27, 29 n. 1 (4th Cir. 1965); *Schurmann v. United States*, 658 F.2d 389, 391 (5th Cir.1981); *Scott v. United States*,

been the law in this circuit since the 1930's.[2] When an orally pronounced sentence is ambiguous, however, the judgment and commitment order is evidence which may be used to determine the intended sentence. *Baca v. United States,* 383 F.2d 154, 157 (10th Cir.1967), *cert. denied,* 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994 (1968). This is the purpose of the written order: to help clarify an ambiguous oral sentence by providing evidence of what was said from the bench. *Walden v. Hudspeth,* 115 F.2d 558, 559 (10th Cir.1940); *Baca,* 383 F.2d at 157 ("where the orally pronounced sentence is ambiguous, the judgment and commitment may and should be used to clarify the actual intention of the sentencing judge."). Because there is no ambiguity in this case and there is a conflict between the oral sentence and the written judgment and commitment order, the oral sentence controls.

The words spoken by the district judge are not ambiguous. The oral sentence clearly ordered defendant to serve his sentence on Count III consecutively to the sentence on Count I;[3] the written judgment and commitment order clearly made the sentence on Count III consecutive to the sentence on Count II. There is a direct conflict.

It has been suggested that whenever there is a conflict between the oral sentence and the sentence as described in the written judgment, the court must attempt to discern the sentencing judge's intentions. Apart from problems associated with ascertaining intent from the appellate record, such a change would affect important principles that underlie the traditional rule. The legal status of the oral sentence and the right to be present at sentencing would be diluted by an intent-based approach.

■ The sentence orally pronounced from the bench is the sentence. One of the purposes of the written judgment and commitment order is to provide evidence of the sentence. The promulgation of Fed.R. Crim.P. 32(b)(1)[4] has not changed the rule that the judgment in a criminal case is the sentence orally pronounced from the bench. Although Rule 32(b) has "enhanced the prestige of the written judgment," *Baca,* 383 F.2d at 157, it has not abrogated the

434 F.2d 11, 20 (5th Cir.1970); *United States v. Glass,* 720 F.2d 21, 22 n. 2 (8th Cir.1983); *Payne v. Madigan,* 274 F.2d 702, 705 (9th Cir.1960), *aff'd by an equally divided court,* 366 U.S. 761, 81 S.Ct. 1670, 6 L.Ed.2d 853 (1961); *United States v. McDonald,* 672 F.2d 864, 867 (11th Cir.1982) (per curiam).

2. *Watkins v. Merry,* 106 F.2d 360, 361 (10th Cir.1939). *See also United States v. Mason,* 440 F.2d 1293, 1299–1300 (10th Cir.), *cert. denied sub nom. Edwards v. United States,* 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971); *Baca v. United States,* 383 F.2d 154, 157 (10th Cir.1967), *cert. denied,* 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994 (1968); *Byrd v. United States,* 345 F.2d 481 (10th Cir.1965).

3. At the sentencing proceeding, the district judge said:

Mr. Paul Villano ...
MR. VILLANO: Yes, sir.
THE COURT: It is the judgment and sentence of the Court that you are committed to the custody of the Attorney General, or his designated representative, on count one for a period of five years, and you are further fined the sum of $10,000.
It is the further judgment and sentence of the Court on count two that you be placed in the custody of the Attorney General, or his authorized representative, for a period of three years and fined a sum of $5,000. The sentence on count two shall run consecutively with the sentence on count one.
It is the further judgment and sentence of the Court on count three that you be placed in the custody of the Attorney General, or his designated representative, for a period of two years and find [sic] the sum of $5,000. The sentence on count three will run consecutively with the sentence on count one.
The defendant is ordered to stand committed until the fines imposed are paid or otherwise the defendant is released according to law.
The Court will recommend that the federal correctional institution at Fort Worth, Texas be the place of confinement. Mr. Villano, you are placed on voluntary surrender.
MR. VILLANO: Yes, sir.
Record vol. II at 27–28.

4. Fed.R.Crim.P. 32(b)(1) provides as follows:
A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk.

rule that the judgment in a federal criminal case is the sentence pronounced from the bench.

Rule 32(b) became effective in 1946, 327 U.S. at 821 (1946), and is a restatement of Rule I of the Criminal Appeals Rules of 1933, 292 U.S. 661 (1934). Notes of Advisory Committee on Rules. Despite the existence of Rule 32(b), however, the law continues to be that the legally effective sentence is the oral sentence and the judgment and commitment order is mere evidence of the sentence.[5] Altering the rule would change the relative status of the oral sentence and the judgment and commitment order by making the two equal. As previously noted, however, the true function of the written document is to help clarify an ambiguous oral sentence by providing evidence of what was stated. Because there is no ambiguity in this case, the effect of the change would be to permit the evidence of the sentence to replace the sentence when there is a conflict. This is contrary to the purpose of the judgment and commitment order and changes the legal status of the oral sentence.

■ Changing the rule as suggested also would endanger the right to be present at sentencing. Fed.R.Crim.P. 43(a) mandates that "[t]he defendant shall be present ... at the imposition of sentence...." Rule 43 has its source in the confrontation clause of the sixth amendment and the due process clause of the fifth and fourteenth amendments. *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 1484–85, 84 L.Ed.2d 486 (1985). Although it is not an absolute right, *Illinois v. Allen,* 397 U.S. 337, 342, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), it is fundamental to the entire law of criminal procedure. *Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892) (dictates of humanity require defendant's presence). A defendant is present only when being sentenced from the bench. Thus, a defendant is sentenced *in absentia* when the judgment and commitment order is allowed to control when there is a conflict.

■ The imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty. Sentencing should be conducted with the judge and defendant facing one another and not in secret. It is incumbent upon a sentencing judge to choose his words carefully so that

**5.** *United States v. Lewis,* 626 F.2d 940, 953 (D.C. Cir.1980) ("The oral sentence constitutes the judgment of the court and is the authority for the execution of the court's sentence. The written commitment is mere evidence of such authority."); *Borum v. United States,* 409 F.2d 433, 440 (D.C.Cir.1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969) ("It was the pronouncement of sentence ... that constituted the judgment of the court."); *Gilliam v. United States,* 269 F.2d 770, 772–73 (D.C.Cir.1959) ("the order of judgment and commitment is merely evidence of this sentence [the oral sentence]...."); *Kennedy v. Reid,* 249 F.2d 492, 495 (D.C.Cir.1957) ("The pronouncement of sentence constitutes the judgment of the court."); *Rowley v. Welch,* 114 F.2d 499, 501 (D.C.Cir. 1940); *United States v. Marquez,* 506 F.2d 620, 622 (2d Cir.1974) ("the written judgment and commitment being nothing more than mere evidence of the sentence imposed orally by the judge."); *Sasser v. United States,* 352 F.2d 796, 797 (6th Cir.1965), *cert. denied,* 385 U.S. 883, 87 S.Ct. 174, 17 L.Ed.2d 111 (1966) ("the pronouncement of sentence represents the judgment of the court and that the order of judgment is merely evidence of the sentence...."); *Wilson v. Bell,* 137 F.2d 716, 720 (6th Cir.1943) ("the judgment in a criminal case is the pronouncement by the judge from the bench, not the entry of the judgment by the clerk. The actual authority for execution of the judgment is the sentence, and the commitment functions to make the judgment of the court effective."); *United States v. Weir,* 724 F.2d 94, 95 (8th Cir. 1984) (per curiam) ("the oral sentence and not the written order constitutes the actual judgment of the court...."); *Johnson v. Mabry,* 602 F.2d 167, 170 (8th Cir.1979) ("the oral sentence pronounced by the sentencing judge constitutes the judgment, and anything inconsistent with the judgment which is included in a commitment order is a nullity."); *Buie v. King,* 137 F.2d 495, 499 (8th Cir.1943); *United States v. Munoz Dela Rosa,* 495 F.2d 253, 256 (9th Cir.1974) ("The only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant."); *Spriggs v. United States,* 225 F.2d 865, 868 (9th Cir.1955), *cert. denied,* 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956) ("The journal entry or signed document is not the order of the court. The order of the court is the pronouncement made by the judge in open court."); *Walden v. Hudspeth,* 115 F.2d 558, 559 (10th Cir.1940) ("[t]he judgment is the pronouncement of the court from the bench. The clerk's entry is not the judgment but merely the formal evidence thereof.").

the defendant is aware of his sentence when he leaves the courtroom.

## III.

■ Courts should not lightly overrule prior judicial decisions. Once a rule of law becomes established, it provides the basis for orderly, evenhanded, consistent and predictable adjudication. The rule that the oral sentence controls when there is a conflict is an easy rule to apply and avoids the murky area of determining the judge's intentions. This rule should not be changed by the court except for the most compelling reasons, which are not present in this case.

■ The sentence in a federal criminal case is the punishment imposed orally by a sentencing judge in a defendant's presence. The written judgment and commitment order is not the sentence. If there is an ambiguity [6] in the sentence, then such extrinsic evidence as the judgment and commitment order, the judge's intentions, or the defendant's understanding of what he believes the sentence to be, may be consulted.[7] In the absence of such ambiguity in the sentence, as when there is a conflict between the oral sentence and the judgment and commitment order, the sentence, as orally pronounced, shall not be altered.

■ The order of the district court denying defendant's motion to correct clerical mistake is reversed. The district court is directed to amend the judgment and commitment order to reflect that Count III is to run consecutively to Count I.

### REVERSED AND REMANDED.

6. An ambiguity may take many forms. The following include some of the circumstances when an ambiguity may exist:
    (1) when the words used have more than one meaning;
    (2) when otherwise unambiguous words are used in an unusual way;
    (3) the extent of the sentence cannot be ascertained from the language used; or
    (4) the plain meaning of the words used lead to an irrational or absurd result.

7. Judge Logan, in his concurrence, recommends reference to the judgment and commitment or-

McKAY, Circuit Judge, concurring, with SEYMOUR, Circuit Judge, joining in this concurring opinion:

While I agree with the result in this case, I believe that a different analytical approach is dictated. In these days of choked calendars, we ought to give primary consideration to procedural solutions that will minimize potential points of litigation, avoiding like the plague a multiplication of rules whenever a sensible overarching rule will achieve at least equally just and manageable results. The proliferation of opinions in the cases we have considered *en banc* to address sentencing problems at least presumptively suggests that we settled (or at least proceeded) on grounds that are more likely to encourage litigation than inhibit it. It is not that I believe any of the proposed analyses are without support in precedent or logic. It only seems shortsighted and unnecessary to continue a tangled web of standards for dealing with cases involving disputes as to which sentence is the legal one, binding on both the defendant and the Government.

Both the majority opinion in this case and Judge Logan's opinions here and in *United States v. Earley*, 816 F.2d 1428, persist in requiring a threshold determination of the nature of the sentencing uncertainty, applying different rules of resolution depending upon whether the uncertainty arises from a "conflict" between the oral pronouncement and the formal judgment and commitment, an "ambiguity" in the oral pronouncement, or "judicial silence" in the oral pronouncement. Other scenarios giving rise to sentencing uncertainties, such as alleged error in the transcription of the oral pronouncement or an alleged clerical error in the formal

der when there is an ambiguity *or* when the sentencing judge does not orally state whether sentences are concurrent or consecutive. In this case, the sentencing judge orally stated how the sentences were to be served; namely, that Count III would run consecutively with Count I. The issue whether the judgment and commitment order should be consulted when the sentencing judge does not orally state that sentences should be concurrent or consecutive is not now before us, and we express no view on that issue.

judgment and commitment, are not addressed and will need to be individually litigated as they arise to determine the proper sentencing rule in those cases. The results of such a multifarious approach are no more logical or fair for all its complexities. The majority states: "If there is an ambiguity in the sentence, then such extrinsic evidence as the judgment and commitment order, the judge's intentions, or the defendant's understanding of what he believes the sentence to be, may be consulted." Majority opinion at 9. No hint is given as to which of these extraneous aides should control if *they* conflict among themselves. Similarly, silence itself poses problems not fully resolved by either the majority's opinion or *Earley*. The majority opinion noticeably omits silence from its list of ambiguities, *see* majority opinion at 1453 n. 6, while *Earley* only deals with silence as to concurrency of sentences. Thus this court gives no clue as to what should govern the analysis in the case of silence regarding something other than concurrency. For example, it is unclear what rule should apply if the court fails to orally sentence a defendant on one count of a multi-count indictment when the defendant is found guilty of all counts, yet the formal judgment and commitment sentences him on that count.

*Baca v. United States*, 383 F.2d 154, 157 (10th Cir.1967), *cert. denied*, 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994 (1968), illustrates the many difficulties which inhere in the fractured approach to sentencing uncertainties perpetuated by the court today. The case distinguishes an actual "conflict" between oral pronouncement and formal judgment and commitment, in which case the oral pronouncement controls, from mere "ambiguity" in the oral pronouncement, where it is suddenly appropriate to consult the formal judgment to clarify the judge's "intention." Judge Logan's concurrence in the present case adopts this distinction, addressing the situation in which there is "no actual conflict ... but rather just ambiguous wording...." Concurring opinion at 1459. The problems in creating such hairsplitting characterizations as "conflict" and "ambiguity,"

with the results turning on the attendant label, should be obvious. Moreover, in the case of an "ambiguity," *Baca* fails to even consider the possibility that the formal judgment itself may not accurately reflect the judge's "intent," if implementing his intent is even the proper goal; it is a goal rejected by the majority today.

I could lengthen this list tenfold, describing all the possible sources of sentencing uncertainty that are not covered by any of the numerous sentencing rules governing resolution of such questions, but I think I have sufficiently made my point. It does not seem to me that it should matter whether the sentencing uncertainty arises from a set of facts characterized as "ambiguous," "contradictory," "judicial silence," or any other label that may have to be created to cover a situation not yet confronted by the court. It is time to cut through this analytical maze we have created by adopting such artificial distinctions and then applying a different rule to each. So long as we persist in beginning our analysis with a search for which of these characterizations applies to the particular case, we invite litigation and endless debate.

There exists in the law an old and respected principle that would readily push courts and potential litigants beyond this characterization quagmire to the only real issue that should ever arise in these cases: whether there is any legitimate basis for a claim that the scope of the sentence administered by the court is in doubt. Justice Frankfurter reiterated that principle, so well settled that it has been treated as an adage, in his opinion for the Court in *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955): "It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment."

This rule is rooted in many of the same considerations as is the rule of lenity, which dictates that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084,

2089, 85 L.Ed.2d 434 (1985) (quoting *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)). While, strictly speaking, the rule of lenity has been applied primarily in resolving doubt about expression of legislative will defining crimes, it is not unprecedented to apply it in other areas, including the resolution of sentencing disputes. Our own circuit has previously stated: "*Any* reasonable doubt or ambiguity arising in connection with the true meaning and intent of the sentencing court will be resolved in favor of the defendant." *Subas v. Hudspeth*, 122 F.2d 85, 86 (10th Cir.1941) (emphasis added). This sentiment is also echoed in many other circuits as well. *See, e.g., United States v. Naas*, 755 F.2d 1133, 1136 (5th Cir.1985) (presumption of concurrency "resolves any ambiguity in favor of the defendant"); *United States v. Sanjurjo*, 481 F.2d 638, 639 (2d Cir.1973) ("Ordinarily we might consider resolving [sentencing] ambiguities in favor of defendant...."); *Gaddis v. United States*, 280 F.2d 334, 336 (6th Cir.1960) (per curiam) ("Where there is any ambiguity, the prisoner is entitled to have the language in the pronouncement construed most favorable to him.").

This very notion gave rise to the rule, based on lenity and confirmed again in *Earley*, that silence as to whether sentences should run consecutively with each other or with preexisting sentences results in a presumption of concurrency of sentences. I perceive no just reason not to fully cement this principle in *all* questions of sentencing uncertainty. Indeed, *Subas* did not involve the presumption of concurrency due to judicial silence. It involved an argument surrounding the judge's choice of syntax in pronouncing sentence which could arguably be interpreted in either of two ways. The Tenth Circuit concluded that the defendant's interpretation was "fanciful," *Subas*, 122 F.2d at 86, but, had the court found a "reasonable doubt or ambiguity," it would have applied the rule of sentencing lenity articulated therein and quoted above.

I fully endorse the concern that drives the court's opinion in this case: the right of the defendant to be a participant in the awesome act of criminal judgment. That concern, however, is readily met by the rule I propose, as the defendant need not be present if a sentence is reduced. *Cf.* Fed.R.Crim.P. 43(c)(4).

Of course, the trial court can always ameliorate the chances of these cases arising by modest adherence to some standard practices designed to ensure that all bases are covered, such as assuring that the sentence intended was precisely pronounced and transcribed and that the written form of judgment conforms to that intent. Those few cases that do slip by would not create a threat to justice when the rule of lenity is applied. In almost all cases, a substantial sentence will be served. It is not a matter of convicted defendants escaping the punitive arm of the law. The dispute normally will be (as in this case) a quibble between a long and longer sentence.

Against these readily answered concerns, we should weigh the costs to the overburdened justice system of what amounts to *ad hoc* rulemaking for each peculiar fact situation. By extrapolating from core concepts of our criminal law, we can put an end to imagining all the fact patterns that our rules must address and directly examine whether the claim of uncertainty has anything more than fabricated substance to it. The threshold determination that uncertainty of some type exists must still be made, and, admittedly, there may be disagreement as to whether there is any true uncertainty. Normally, however, that determination can be made summarily on the record in those few cases that would reach litigation once prosecutors and defendants know that the rule of lenity is the standard by which claims of this type will be judged. Once uncertainty is determined, no matter what its character, its resolution should flow easily from the application of sentencing lenity. No classification need be done first.

While it may be argued that the rule of lenity is arbitrary and may result in outcomes not subjectively contemplated by the sentencing court, as the majority opinion in

this case reveals, the majority's rule produces an equally random result. It is just as likely that the written judgment will mistake the court's subjective intent as it is that the orally pronounced or transcribed judgment will. Our purpose here is to find a balanced rule that will provide clear and just standards for settling these disputes.

LOGAN, Circuit Judge, concurring:

We are a court used to dealing with the parole evidence rule, that an unambiguous written statement supersedes and precludes reliance upon any prior oral statements between the parties. The Statute of Frauds, in effect in the Anglo-Saxon world since 1677, makes many agreements unenforceable unless they are in writing. Fed. R.Civ.P. 58 requires every civil judgment to be set forth on a separate "document." The time limitations for appeal from civil and criminal cases do not commence until "the entry of the judgment or order appealed from." Fed.R.App.P. 4(a) and (b). One would suppose then that when Fed.R. Crim.P. 32(b)(1) says that "[a] judgment of conviction shall set forth the sentence," and "[t]he judgment shall be signed by the judge and entered by the clerk," that written document would supersede the prior oral pronouncement of sentence by the judge from the bench. The trial judge below supposed that to be true when he considered the motion to correct filed under Fed.R.Crim.P. 36. But we here hold that is not true in criminal sentencing; instead, citing many cases, we declare that the rule of law is that the oral pronouncement of sentence controls and overrides the written pronouncement of sentence in the judgment and commitment order. I agree with that general proposition for the reasons stated in the majority opinion and elaborated in the first section below. But I cannot agree entirely with the majority's redaction of that proposition to an invariable and ostensibly simple rule. As discussed in the sections that follow, I think there are two major problems in moving from the general proposition to the application of an "oral controls the written" rule: (1) determining what in fact was the oral pronouncement of sentence; and (2) dealing with ambiguity or silence on an important aspect of the sentence.

## I

The rule that the oral pronouncement controls in a conflict with the written order had its origin long before the promulgation of Rule 32(b)(1), requiring a written order setting forth the sentence. *See Hill v. United States ex rel. Wampler*, 298 U.S. 460, 465, 56 S.Ct. 760, 762, 80 L.Ed. 1283 (1936). As the majority notes, a primary rationale for the rule is the necessity for the defendant's presence at sentencing. This is now covered by the requirement in Fed.R.Crim.P. 43 that the defendant be present at sentencing unless his punishment is to be reduced under Fed.R.Crim.P. 35. *See Rakes v. United States*, 309 F.2d 686, 687 (4th Cir.1962), *cert. denied*, 373 U.S. 939, 83 S.Ct. 1543, 10 L.Ed.2d 694 (1963).

The history of the presence privilege was traced in *United States v. Gregorio*, 497 F.2d 1253 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). There a defendant challenged his conviction on the ground that he had been excluded from a jury instruction conference in violation of the Due Process Clause and Rule 43. *Id.* at 1256–57. The circuit court affirmed the defendant's conviction. But en route to that determination it recognized Rule 43 as a "restatement" of the common law privilege of presence, *see* Fed.R. Crim.P. 43 advisory committee notes, and explored the development of that common law. *Gregorio*, 497 F.2d at 1257–59. The earliest reason for requiring the defendant's presence at trial was the English tradition denying counsel to felons. *Id.* at 1257. Without counsel, a defendant had to be present to make his defense. *Id.* After this tradition went by the wayside in the nineteenth century, two other reasons for requiring the defendant's presence evolved. *Id.* at 1258. First, the reliability of the trial should be protected by giving defendants a chance to help with their defense. *Id.* at 1258–59. This reason would include the defendant's right of allocution, the right to speak in his own behalf, at sentenc-

ing. *See* Fed.R.Crim.P. 32(a)(1); *Green v. United States*, 365 U.S. 301, 304–05, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961) ("legal provenance" of Rule 32(a) "was the common-law right of allocution"); *Byrd v. United States*, 345 F.2d 481, 483–84 (10th Cir. 1965). Second, the defendant should be given an opportunity to observe and understand the trial to "prevent the loss of confidence in courts as instruments of justice which secret trials would engender." *Gregorio*, 497 F.2d at 1258. The *Gregorio* court characterized its analysis of the reasons for Rule 43 as equally applicable to the defendant's due process claim. *Id.* at 1259.

Long tradition alone is not enough reason to continue a practice that produces so many hard cases for the courts. But the right to speak in one's own behalf, and to observe and understand the court proceedings, are extraordinarily important. That the judge and the convicted defendant should be face-to-face when the sentence is pronounced, also promotes important societal interests. If we should adopt a rule that the written judgment and commitment order is the sentence, judges would have to hold defendants over after sentencing hearings until written orders are prepared and signed, or bring the defendants back for the signing, in order to comply with Rule 43. I fear such a rule would tempt judges to bring to the sentencing hearings orders already prepared, to be signed in the defendant's presence. Such a practice would severely compromise the defendant's right of allocution. If we should hold that the judge could hear the defendant's plea for mercy, take the matter under advisement, and issue a sentence, in writing, outside the defendant's presence, I believe the sentences would sometimes not be the same as under the rule that sentence must be orally pronounced in a face-to-face fashion. Therefore, I agree, as a general proposition, that the sentence orally pronounced in the defendant's presence is *the* sentence of the court.

## II

What if the oral pronouncement was inaccurately reported in the transcript, and how does one know whether it was inaccurately reported if there is no tape recording? This is the situation I thought was before us when I wrote the earlier panel opinion. That the sentencing had been taped was only discovered after argument to the en banc court. The court reporter has resided out of the country for the past three years; we had no affidavit from her nor her original notes. Counsel for codefendants had filed affidavits as to what they remembered of the court's pronunciation three years before; but the judge's personal recollection was to the contrary. More important, the written notes of the courtroom deputy, written down contemporaneously with the pronouncement, were that the sentences were to all run consecutively, and the judgment and commitment order, signed on that day, was to the same effect. In that circumstance does the reporter's transcript control?

In my view it will be a rare case in which all participants will even claim to recall precisely what was said, and an even rarer case in which their recollections will all agree with each other in contradiction to the written judgment and commitment order. Indeed, in the case at bar, if it were not for the recently discovered tape recording of the sentencing hearing, the trial court's oral pronouncement would be very much in doubt. Fortunately, we found the tape recording of the sentencing hearing, and it clearly shows that the oral pronouncement prescribed the sentence on the third count to run consecutively with the first, instead of the second count.

As a practical matter, the written sentence and commitment order most of the time must be recognized as the best evidence of "what was said from the bench," maj. op. at 1451. *See Hill*, 298 U.S. at 464, 56 S.Ct. at 762. This is the order that follows the defendant throughout his stay in prison and upon which prison authorities, parole boards, and the defendant himself generally rely. No transcript of the judge's oral pronouncement is made to be attached to the prisoner's prison record; no transcription of sentencing is likely to be made for an appeal, unless the sentencing

is drawn into issue. *See* Fed.R.App.P. 10; 10th Cir.R. 10.1.

The government should be held to a duty, I believe, to point out quickly to the court disparities between the sentence orally pronounced and the sentence in the written order, if it believes the sentence recorded in the judgment and commitment order was wrong. The defendant certainly will not do so, if the written order favors him, for fear that the judge will change the sentence before the defendant enters executive custody and the court loses its power to make such a change freely. If the government fails to call a problem with the written order to the court's attention while the court may still change or clarify its sentencing, then I do not believe, as I discuss in IV, infra, that it may raise such problems later to the defendant's detriment.[1]

### III

What if the orally pronounced sentence is silent or ambiguous on an important matter? In the instant case the majority opinion says there is no ambiguity because the judge said "consecutively with the sentence on count one." But it declares that an ambiguity may exist, *inter alia,* "when otherwise unambiguous words are used in an unusual way," or "the plain meaning of the words used lead to an absurd result." Maj. op. at 1453 n. 6.

The government, at oral argument, tried to make a case for ambiguity here, arguing that the oral pronouncement itself, in context, was ambiguous: The word "concurrent" was never used in this sentencing proceeding; in the context of pronouncing three sentences, to say that two of them were to run "consecutively ... with count one" creates ambiguity; there is ambiguity in using the word "with" in connection with

the word "consecutively," because the more standard usage is "consecutively to" or "concurrently with." But I agree with the majority opinion that the instant pronouncement should not be treated as one that is ambiguous. Few criminal defendants were college English majors. Some defendants may understand the words "consecutively" or "concurrently" only because they have encountered them before in their earlier criminal proceedings. We should not act as a congress of grammarians, parsing the sentences to find ambiguity in what would have been reasonably understandable.[2]

Some courts, including the Tenth Circuit, have characterized the situation as one of ambiguity rather than conflict when a sentencing court did not state orally whether sentences were concurrent or consecutive, but the written commitment order indicated the sentences were to run consecutively. Thus, in the face of the current legal rule that silence means concurrent sentences, we have relied upon the written judgment and commitment order as evidencing the district court's intent to impose consecutive sentences. *Lundquist v. Taylor,* 347 F.2d 369, 370 (10th Cir.1965); *see also Schurmann v. United States,* 658 F.2d 389, 391 (5th Cir.1981); *Aga v. United States,* 312 F.2d 637, 641 (8th Cir.1963). The majority here says if there is ambiguity "such extrinsic evidence as the judgment and commitment order, the judge's intentions, or the defendant's understanding of what he believes the sentence to be, may be consulted." Maj. op. at 1453 (footnote omitted). In another place the majority says that if the oral pronouncement is ambiguous the judgment and commitment order may be used to "help clarify ... by providing evidence of *what was said from the bench.*"

---

**1.** The district court retains the ability to correct an illegal sentence, to change its mind on the sentence or to correct misstatements of its intent, as permitted by Fed.R.Crim.P. 35 and 36, and subject to certain constitutional limits. *See United States v. Earley,* 816 F.2d 1428 (10th Cir.1986) (en banc). In *United States v. Davidson,* 597 F.2d 230 (10th Cir.), *cert. denied,* 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979), we held that the district court may call the defendant

back for different or corrective sentencing until the defendant passes into executive custody.

**2.** Even English professors are unable to agree on definitions of ambiguity and conflict, and the distinctions between them. *See* W. Empson, Seven Types of Ambiguity (1930, 1956); C. Brooks, The Well Wrought Urn (1947, 1966).

*Id.* at 1451 (emphasis added). I assume the majority opinion does not mean that literally, and would in that situation, as I suggest, follow the written order, if it is not ambiguous.

## IV

In a case of conflict, if the written judgment and commitment order imposes a longer, harsher, or otherwise more onerous sentence on the defendant than the oral pronouncement, I would apply the rule as does the majority here. Treating the judge's oral pronouncement as the sentence, the harsher written order in effect increases the sentence outside the presence of the defendant, in violation of Rule 43. No matter how much time has elapsed before this conflict is discovered and brought to the court's attention, the sentence orally pronounced should be confirmed as the defendant's sentence.

If the sentence orally pronounced is harsher than the written judgment and commitment order, I would hold that the written should control unless the government moves to call the matter to the attention of the court, while the court still has authority to make a sentencing order. *See Earley*, at 1430–1431, 1432–1434. Under present Fed.R.Crim.P. 35(b) the district court may reduce a sentence, without a motion, within 120 days of its imposition. The court's written judgment and commitment order, signed by the judge after the sentence is pronounced, arguably is a sua sponte reduction or clarification of the judge's intent. *See United States v. Glass*, 720 F.2d 21, 22 n. 2 (8th Cir.1983) (permitting district court on remand to decide whether shorter sentence stated in written order represented a change of mind). The defendant need not be present at a reduction of sentence. Fed.R.Crim.P. 43(c)(4).

As stated above a defendant will not bring the difference between the oral and the written sentences to the attention of the court, for fear that the difference will be resolved against him. The written order is what follows him through the course of his stay in prison. Insofar as a discrepancy is apparent only after review of a re-porter's transcript of the oral pronouncement of sentence, a defendant may not even be aware of the discrepancy. It is reasonable to impose a duty on the government to call a problem to the court's attention, and within time limits, for the due process reasons stated in *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978):

> "[T]he power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit. When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope. As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance. The prisoner may be aided in enduring his confinement and coping with the prison regime by the knowledge that with good behavior release on parole or release outright will be achieved on a date certain. After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set."

*Id.* at 101.

If there is no actual conflict as to what was said, but rather just ambiguous wording in the orally pronounced sentence or silence on whether sentences were concurrent or consecutive, I would use the contemporaneous written order of judgment and commitment to clarify the sentencing judge's intent, as we did in *Lundquist v. Taylor*. *Accord United States v. Pagan*, 785 F.2d 378, 380 (2d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986); *Schurmann v. United States*, 658 F.2d 389, 391 (5th Cir.1981). Although this may result in the imposition of a potentially longer sentence, the defendant has a copy

**1460**

of the written order. Under such circumstances, if the defendant thinks a mistake was made in the sentencing order, the defendant, no less than the government, should be held to a duty to bring the matter promptly to the attention of the court.

If there is ambiguity in the written order of judgment and commitment as well, then it will be necessary to consult the record of the sentencing hearing as a whole to ascertain if the ambiguity may be resolved without finding the sentence illegal. The same due process concerns that limit recognition of a sentence harsher than that in the written order mandate application of the principle of lenity here. *See Gaddis v. United States,* 280 F.2d 334, 336 (6th Cir. 1960) (prisoner entitled to have ambiguous language in the pronouncement construed most favorable to him); *cf. Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955) ("It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.").

In the case before us, I agree with the majority that we are dealing with conflict between the oral and written orders. The written order is the harsher, more onerous. I would hold that the oral sentence controls, because to hold otherwise would violate Villano's right to be present, as set forth in Fed.R.Crim.P. 43 to his detriment. Therefore, I concur in the court's judgment.

STEPHEN H. ANDERSON, Circuit Judge, with whom BARRETT, Circuit Judge, joins in concurring:

I concur in the disposition of this case. My dissent in the companion case of *United States v. Earley,* 816 F.2d 1428, (10th Cir.1987), explains my views regarding ambiguities in sentencing and the importance of ascertaining judicial intent in sentencing. To the extent the reasoning in this case is not inconsistent with those views, I also concur in the reasoning supporting the decision.