**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 31, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES D. RUSSIAN,

Defendant - Appellant.

No. 17-3157
(D.C. No. 6:14-CR-10018-EFM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **PHILLIPS**, Circuit Judges.

This appeal arises from James Russian's resentencing. Before the resentencing hearing, Mr. Russian requested the court replace his appointed counsel. In his view, his counsel had repeatedly lied to him, thus creating a debilitating breakdown in communication.

The district court denied the motion. It then sentenced Mr. Russian to 101 months' imprisonment, and imposed, as relevant here, two conditions of supervised release: (1) a prohibition on engaging "in activities that advocate the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of law," and (2) a requirement to complete an "approved program for substance abuse, which may include . . . outpatient and/or residential treatment . . . as directed by the Probation Office." R., Vol. 1 at 826.

Mr. Russian timely appealed, arguing the district court abused its discretion by denying his motion to replace counsel. He also challenged the two conditions of supervised release.

We **AFFIRM** the district court's denial of Mr. Russian's motion to replace his counsel because the record reveals no breakdown in communication. We also **AFFIRM** the condition prohibiting Mr. Russian from engaging in activities that advocate the violation of the law. Mr. Russian contends this condition differs from the one the district court announced orally. But the sentencing transcript demonstrates the orally announced condition mirrors the condition in the amended judgment. Finally, we **VACATE** the condition requiring Mr. Russian to participate in a substance abuse program. Delegating the decision of whether Mr. Russian should enter a residential treatment program to the probation office contravened Article III of the Constitution. Accordingly, we **REMAND** the case to the district court to consider whether to reimpose this condition in a manner that complies with the Constitution.

# I. Background

The government charged James Russian[1] with various offenses related to his allegedly unlawful possession of weapons and drugs. Mr. Russian pleaded not guilty, and the matter was set for trial.

Representing himself pro se at a suppression hearing, Mr. Russian asked to make an entry for the record. When the court allowed him to do so, he repeated the phrase "foreign immunity" numerous times. R., Vol. 1 at 601. The court told Mr. Russian to cease speaking. He refused. Instead, he continued repeating the phrase "foreign immunity" until the court adjourned the hearing and held Mr. Russian in contempt.

Eventually the court revoked Mr. Russian's right to represent himself and appointed counsel. A jury convicted Mr. Russian of all four counts. The court then sentenced him to 137 months' imprisonment.

Mr. Russian appealed. But his trial counsel withdrew, so the court appointed him new counsel: Federal Public Defender Melody Brannon. On appeal, our circuit concluded the district court had committed various errors when sentencing Mr. Russian, none of which are relevant to this appeal. Accordingly, the case was remanded to the district court for resentencing.

---

[1] From his pro se filings, we believe Mr. Russian prefers his name spelled as "James-Donald: Russian." R., Vol. 1 at 780. For ease of reading, we refer to the appellant by just his last name "Russian."

The district court set the resentencing hearing for July 7, 2017. Prior to the hearing, however, on June 20th Mr. Russian filed a pro se motion. In it, he reported that "Melody Brannon ha[d] been Fired for the many conflicts of INTEREST." *Id.* at 785 (capitalization in original).

Ten days later, Ms. Brannon filed a "Motion to Waive Counsel" in which she explained that "Mr. Russian asks the Court to dismiss counsel and objects to counsel filing anything further on his behalf, other than this motion." *Id.* at 788. She asked the court to "set the matter for a *Faretta v. California*[2] hearing on whether [Mr. Russian] should be permitted to represent himself at sentencing." *Id.* Finally, the motion asserted Ms. Brannon was "unaware of any prohibitive conflict or debilitating breakdown in communication, other than the distrust of counsel expressed by Mr. Russian." *Id.* at 790.

On July 5th, the court issued an order addressing Mr. Russian's and Ms. Brannon's motions. It read Mr. Russian's motion as "purport[ing] to fire counsel" and seeking the "reinstatement of the right of self-representation." *Id.* at 808. The court denied his request to once again represent himself. In doing so, it emphasized that Mr. Russian had previously appealed his sentence, but failed to appeal the court's revocation of his right to self-representation. Accordingly, the revocation "remains the law of this case," and the court saw no reason to reconsider it. *Id.* at 809.

---

[2] 422 U.S. 806 (1975).

A day later—and just a day before the resentencing hearing—Mr. Russian filed another pro se motion. Entitled "Motion to Replace Counsel," this motion alleged that Mr. Russian's June 20th motion did not, in fact, "ask[] the court for self representation at sentencing," as Ms. Brannon's June 30th motion had claimed. *Id.* at 818. Rather, he maintained his June 20th motion asked the court to "replace counsel due to the debilitating breakdown in communication." *Id.* at 819.

The resentencing hearing occurred the next day. The court began by permitting Mr. Russian to make "any other statements or objections" he had to its July 5th order. R., Vol. 3 at 9. Mr. Russian began by explaining that his July 6th motion and the court's July 5th order got "crossed in the mail." *Id.* While the court acknowledged receiving his motion from July 6th, it believed its July 5th order addressed the issue—namely, Mr. Russian's request "for replacement of counsel." *Id.*

Nevertheless, the court allowed Mr. Russian to read his July 6th motion aloud. He repeated the charge that his counsel "misrepresent[ed] [his] position on [the] *Faretta v. California* hearing. James D. Russian never asked the court for self-representation, as Ms. Brannon's motion had claimed." *Id.* at 10. Once Mr. Russian had finished, the court noted it understood he was "dissatisfied that Ms. Brannon ha[d] not followed all of [his] instructions or requests with respect both to the proceedings of [the] appeal as well as the instant matters here." *Id.* at 11.

And the court recognized it could "replace [Ms. Brannon] with another appointed attorney" or it could let Mr. Russian represent himself. *Id.* at 12. But "given the late date of this issue" and the court's familiarity with Ms. Brannon's "national reputation for skill in representing criminal defendants," it denied his request for replacement counsel. *Id.*

Finally, the court gave Mr. Russian the chance to say "anything else" he wanted with "regards to that issue." *Id.* He used this opportunity to express his view he is not a citizen of the United States.

Before the court moved on, Ms. Brannon interjected. She explained that she "told Mr. Russian" she would clarify how she "understand[s] that there's a distinction between" Mr. Russian "representing himself and wanting new counsel." *Id.* at 13. And to the extent her motion "did not accurately reflect" Mr. Russian's wishes, she thought the court "addressed all of that today." *Id.* at 13–14.

The court proceeded to sentence Mr. Russian to 101 months' imprisonment, followed by two years of supervised release. It also imposed, as relevant here, two conditions of supervised release. First, a prohibition on engaging "in activities that advocate the violation of law." R., Vol. 1 at 826. And second, a requirement that Mr. Russian "successfully participate in and successfully complete an approved program for substance abuse, which may include . . .

-6-

outpatient and/or residential treatment . . . as directed by the Probation Office."

*Id.*

## II. Analysis

Mr. Russian raises three issues. First, he argues the district court abused its discretion by denying his request for replacement counsel. His second argument relates to the condition of supervised release that prohibits him from engaging in activities that advocate the violation of the law. Specifically, he claims the condition in the amended judgment does not reflect the condition the court orally announced at his resentencing hearing. Finally, his third argument relates to the condition that requires him to participate in a substance abuse program. The district court plainly erred, he says, by delegating the decision of whether he should enter a residential treatment program to the probation office.

### A.    *Request for New Counsel*

"We review a district court's refusal to substitute counsel for an abuse of discretion." *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) (quoting *United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir. 1999)). "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.*

Here, Mr. Russian asks for new counsel because of an allegedly "debilitating breakdown in communication"—in other words, a complete

communication breakdown. R., Vol. 1 at 819. Four factors help us determine whether counsel should be replaced for this reason: "(1) whether the motion for new counsel was timely; (2) whether the trial court adequately inquired into the reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown." *Lott*, 433 F.3d at 725.

Consideration of these factors compels us to conclude the district court did not abuse its discretion by denying Mr. Russian's request to substitute counsel.

First, the tardiness of Mr. Russian's request supports the district court's decision. Mr. Russian claims his June 20th motion requested the court replace his counsel. But after carefully reviewing the motion, we cannot agree. Nowhere in it can we find a request to replace counsel. Nor does Mr. Russian's briefing point us to any such language. To be sure, the June 20th motion purports to fire his current counsel. But this does not necessarily mean Mr. Russian asked the court to provide him with new counsel; he could have been asking to represent himself in a pro se capacity. Thus, since Mr. Russian's June 20th motion did not contain a request for replacement counsel, he first requested this in his motion on July 6th—just a day before the resentencing hearing. Timeliness therefore weighs heavily in favor of concluding the district court did not abuse its discretion.

Even if we thought Mr. Russian's June 20th motion did, in fact, request the court replace his counsel, timeliness still weighs in favor of affirming, though less heavily. Two of the situations Mr. Russian claims demonstrate the debilitating communication breakdown between him and his counsel occurred in 2015—years before his motion in June of 2017. But he also complained about Ms. Brannon not keeping her word after a meeting on May 23, 2017. The motion was timely as to this request.

The second factor, whether the trial court adequately inquired into the reasons for making the motion, also weighs heavily in favor of affirmance. Despite the tardiness of the motion, the court still took steps to ensure it heard and understood his argument. At the resentencing hearing, the court allowed Mr. Russian to make any statement or objection to its July 5th order. And after Mr. Russian read his July 6th motion aloud, the court gave him the chance to say "anything else" on the issue. Simply stated, in spite of Mr. Russian's tardy pro se motions, the court went to great lengths to inquire into his complaint by giving him repeated opportunities to explain his argument.

The third factor weighs heavily in favor of affirming the district court as well. This factor considers whether the alleged conflict was so great that it led to a total lack of communication, thus precluding an adequate defense. Mr. Russian contends his relationship with his counsel suffered a debilitating breakdown in communication. The record rebuffs this contention. Most strikingly, at the

resentencing hearing Ms. Brannon explained how she "told Mr. Russian" she would clarify that her June 30th motion should have reflected his desire to have new counsel appointed, rather than represent himself. *Id.* at 13. In other words, counsel admitted she and her client *had been communicating* up until the resentencing.

To demonstrate his communication with counsel had broken down, Mr. Russian points to three instances in which his counsel purportedly lied to him. But these examples do not persuade us that a complete breakdown in communication occurred.

Mr. Russian first claims his counsel lied to him when she said she would raise a *Faretta* defense. His June 20th motion explained that in 2015 Ms. Brannon told him "she was going to get [him] relief with the *Faretta v. California* case," but she "didn't keep her word and get [him] the relief." R., Vol. 1 at 785–86. And Ms. Brannon "lie[d] to [him] again," he says, by claiming she "couldn't use the *Faretta* case, the[re] just wasn't enough the[re] to use." *Id.* To start, we fail to understand how this qualifies as lying. By its terms, Mr. Russian's complaint relates to his counsel's inability to "get the relief" he sought. *Id.* Not being able to secure relief for a client is a far cry from lying.

But generously reading Mr. Russian's pro se motion, he seems to allege that his counsel lied by saying she would raise the *Faretta* issue and then not doing so. Even assuming this is true, it does not evidence a *total* breakdown in

communication. Indeed, counsel did not lie about failing to raise the defense; rather, she told Mr. Russian she did not raise it because there was not a strong legal basis for the argument. So even if counsel initially misled Mr. Russian about what she would argue, that she later told Mr. Russian she did not raise the defense and explained her reasoning demonstrates that a total and complete breakdown in communication had not occurred.

Similarly, Mr. Russian highlights how in December of 2015, Ms. Brannon claimed he would be "out of prison before the summer." *Id.* at 785. Yet in June of 2017, he was "still here in lock up." *Id.* According to Mr. Russian, this further exposes how his counsel frequently lied to him. We assume, solely to dispose of Mr. Russian's contention, that Ms. Brannon in fact stated the date she could get Mr. Russian released from prison. In doing so, she may have promised her client too much. She may also have failed to adequately set her client's expectations about what result she could achieve, and how quickly she could achieve it. But misunderstandings between lawyers and clients frequently occur. And lawyers' predictions are no exact science; they can be subject to changing circumstances, and often prove less than prophetic in hindsight. Thus, though every effort should be taken to avoid such miscommunications or over-certain predictions, and even assuming an isolated incident such as this occurred in this case, that does not evidence a total breakdown in communication.

Third, Mr. Russian highlights how his counsel's motion on June 30th incorrectly claimed he wanted to represent himself. In his view, this demonstrates the destruction of communication between them. But Mr. Russian ignores how at resentencing, his counsel *corrected* any confusion by (1) asking the court to let Mr. Russian explain what, exactly, he was asking the court for, and (2) clarifying that the hearing had cleared up her motion's failure to reflect Mr. Russian's wishes. Thus, even if Mr. Russian and his counsel failed to effectively communicate about the June 30th motion, his counsel remedied this problem at the resentencing hearing.

The third factor therefore supports the district court's ruling. The three pieces of evidence Mr. Russian claims show the debilitating breakdown in communication do not, in fact, suggest any such breakdown occurred.

Finally, the fourth factor is not implicated. Since Mr. Russian provided no specific examples of the alleged breakdown in communication, we cannot analyze whether he substantially and unreasonably contributed to it.

In sum, all three relevant factors support the district court's decision. Accordingly, we conclude the district court did not abuse its discretion by denying Mr. Russian's request to replace his counsel.

Mr. Russian's briefing does not focus on these factors. Rather, he contends we should remand this case for a more fundamental reason: the district court misconstrued, and therefore did not address, his argument. More precisely, he

claims the district court all but ignored his theory that his counsel's lack of candor caused the communication breakdown. To demonstrate this, he points to the fact that the district court's July 5th order focused solely on his right to self-representation; it made no mention of the truthfulness theory. Likewise, at the resentencing hearing, the court only acknowledged Mr. Russian's frustration "that Ms. Brannon ha[d] not followed all of his instructions"; the court did not explicitly discuss his contention that his counsel repeatedly lied to him. R., Vol. 3 at 11.

We are confident the district court fully understood—and fully rejected—Mr. Russian's argument. In its order and at the resentencing hearing, the district court did not need to recite the details of the argument Mr. Russian advanced. It listened to Mr. Russian's argument at the resentencing hearing, considered it, and ultimately rejected it. Nothing else was required.

But more to the point, we think the district court did address Mr. Russian's theory. As we explained, Mr. Russian argued his counsel lacked candor by saying she would raise the issue of holding a *Faretta* hearing, yet failing to do so. In other words, his counsel misleadingly failed to follow his instructions. The district court directly referenced this theory, noting it understood Mr. Russian was "dissatisfied that Ms. Brannon ha[d] not followed all [his] instructions or requests." *Id.* To be sure, the district court did not use the words trustworthiness,

candor, or liar. But failing to more fully or directly address Mr. Russian's theory does not qualify as an abuse of discretion.

In short, after carefully reviewing the sentencing transcript, we are satisfied the district court understood and rejected Mr. Russian's request for new counsel.

### B.  *Restriction on Advocacy*

Next, Mr. Russian asks us to modify the condition of supervised release that prohibits him from engaging in "activities that advocate the violation of law." R., Vol. 1 at 826. He claims the condition written in the amended judgment differs from the condition orally pronounced in open court. The orally announced condition, he says, prohibits advocating for "*direct* violation[s] of the law." R., Vol. 3 at 48 (emphasis added). Yet in the amended judgment, the word "direct" is nowhere to be found. Thus, because "an orally pronounced sentence controls over a judgment and commitment order when the two conflict," Mr. Russian asks us to alter the amended judgment so it includes the "direct violation" language. *United States v. Villano*, 816 F.2d 1448, 1450–51 (10th Cir. 1987).

To understand Mr. Russian's argument, it is helpful to walk through the district court's discussion of the issue. When the court first raised the condition, Ms. Brannon expressed her concerns that it impermissibly limited Mr. Russian's First Amendment rights. After a lengthy discussion between both parties, the court said:

> I think I'm going to impose a restriction that prohibits
> Mr. Russian from engaging in activities which advocate
> the violation of the law or assisting others who are
> advocating the violation of the law, but limit it to that,
> and otherwise not adopt the language as proposed in the
> PSIR.

R., Vol. 3 at 22–23. Neither party objected.

After discussing a number of other issues, the court summarized the

sentence it would impose, commenting on the advocacy focused condition:

> I'm hopeful that this sentence will also afford adequate
> deterrence to future criminal conduct, and protect the
> public from the crimes of the defendant. And I do think,
> *apropos the colloquy that Ms. Brannon and I had
> earlier*, there is a difference between Mr. Russian
> vigorously advocating for his view of the law and his
> being involved in violations of the law. And certainly
> the former, his advocacy, is I believe a right that he has
> and should not be considered itself criminal, only
> activities in which he would advocate or assist others in
> advocating for *the direct violation of the law*.

*Id.* at 41–42 (emphases added). The court then orally pronounced Mr. Russian's

sentence, noting that he must "comply with the standard conditions of supervision

that have been adopted by this court." *Id.* at 45.

Mr. Russian claims the condition the court orally announced included the

"*direct violation* of the law" language. *Id.* at 42 (emphasis added). But the

sentencing transcript tells a different story. It makes it clear that the condition

the court "adopted" was the condition it initially articulated after its lengthy

discussion with the parties about the condition's scope. After all, it was then the

court described and considered the condition and asked for objections. *Id.* at 22–23. Though the court later mentioned the condition again—and described it as prohibiting only advocating for direct violations of the law—this later discussion did not supercede or somehow supplant the earlier one. In fact, the court explicitly referred back to the "colloquy" it previously had with Ms. Brannon, thus suggesting it intended to impose the condition of supervised release it had previously articulated, which did not include the direct violation language. In sum, the sentencing transcript convinces us the condition of supervised release the court orally announced is the same condition in the amended judgment.

Even if the district court's mention of a direct violation of law created a dash of ambiguity, the result remains the same. When "an orally pronounced sentence is ambiguous . . . the judgment and commitment order is evidence which may be used to determine the intended sentence." *Villano*, 816 F.2d at 1451. Therefore, even if we generously read the sentencing transcript to create some ambiguity about the contours of this condition, we would resolve this ambiguity by looking to the amended judgment. And the amended judgment does not, of course, include the direct violation language.

In sum, the orally pronounced condition mirrors the condition in the amended judgment.

### C. *Residential Treatment Program*

Mr. Russian's final argument relates to the condition of supervised release that requires him to "successfully participate in and successfully complete an approved program for substance abuse, which may include . . . outpatient and/or residential treatment . . . as directed by the Probation Office." R., Vol. 1 at 826. Neither party objected to the condition, so we review for plain error.

He argues the district court plainly erred by delegating the judicial task of determining whether he should be enrolled in an outpatient and/or residential treatment program to a non-judicial officer—the probation office. For good reason, the government agrees. "Article III prohibits a judge from delegating the duty of imposing the defendant's punishment to the probation officer." *United States v. Mike*, 632 F.3d 686, 695 (10th Cir. 2011). And in *Mike*, we held that conditions requiring "the defendant to participate in residential treatment . . . must be imposed by the district court." *Id.* The district court thus plainly erred by delegating the decision of whether Mr. Russian needs to participate in a residential treatment program to the probation office.

We accordingly **VACATE** this condition of supervised release and **REMAND** this case to the district court for the sole purpose of considering whether to reimpose this condition in compliance with Article III of the Constitution.

# III.  Conclusion

In sum, we **AFFIRM** the district court's denial of Mr. Russian's request to replace his counsel.  We also **AFFIRM** the condition of supervised release prohibiting him from engaging in activities that advocate violating the law.  But we **VACATE** the condition that delegated the decision of whether Mr. Russian will enter a residential treatment program to the probation office.  Accordingly, we **REMAND** the case to the district court to consider whether to reimpose that condition in a manner that complies with the Constitution.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge